UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

STEVE MATTISON,

      Petitioner,

v.                                           Case No. 5:14cv227/RV/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1), with supporting memorandum (doc. 2). Respondent filed an answer, submitting relevant portions of the state court record (doc. 15). Petitioner replied (doc. 18)[1]. The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts. The undersigned further concludes that the pleadings and attachments before the court

---

[1]Petitioner's reply merely reiterates, verbatim, the arguments presented in his supporting memorandum.

show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in Bay County Circuit Court Case No. 10-CF-2013, with burglary of a dwelling (5213 Melissa Drive, Parker, Florida) (Count 1) and grand theft with damage to property over $1,000.00 (Count 2).  (Doc. 15, Ex. A, pp. 1-2, 5).[2] Petitioner went to trial.  (Ex. C (jury selection), Exs. E-F (trial)).  The jury found petitioner guilty as charged.  (Ex. A, pp. 65-66; Ex. F, p. 237).  By judgment rendered March 11, 2011, petitioner was adjudicated guilty and sentenced to 72 months imprisonment followed by 60 months on probation on Count 1, and a concurrent term of 60 months imprisonment on Count 2.  (Ex. A, pp. 101-107 (judgment and sentence), pp. 112-113 (probation order)).  The Florida First District Court of Appeal (First DCA) affirmed the judgment on June 1, 2012, per curiam and without a written opinion.  *Mattison v. State*, 87 So. 3d 1290 (Fla. 1st DCA 2012) (copy at Ex. J).

On September 26, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. K, pp. 1-9).  The motion was stricken as facially insufficient with leave to amend.  (*Id*., p. 10).  Petitioner filed

---

[2]All references to exhibits are to those provided at Doc.15, unless otherwise noted.  If a cited page has more than one page number, the court cites to the page number appearing at the bottom center of the page.  If there is also a Bates Stamp number, that number controls.

an amended motion on February 24, 2013.  (*Id*., pp. 46-87).  After the state court struck Ground III with leave to amend (*id*., p. 95), petitioner filed an amended Ground III.  (*Id*., pp. 97-111).  On July 2, 2013, the state circuit court denied postconviction relief as to all of petitioner's claims, without an evidentiary hearing.  (Ex. K, pp. 113-140).  The First DCA affirmed on November 27, 2013, per curiam and without a written opinion.  *Mattison v. State*, 130 So. 3d 231 (Fla. 1st DCA 2013) (Table) (copy at Ex. N).  The mandate issued February 7, 2014.  (Ex. N).[3]

Petitioner filed his federal habeas petition on September 4, 2014.  (Doc. 1).  The petition raises four grounds of ineffective assistance of trial counsel.  Respondent asserts that petitioner's claims fail because the state courts' rejection of them was neither contrary to, nor an unreasonable application of, clearly established federal law, and did not involve an unreasonable determination of the facts.  (Doc. 15).

## EVIDENCE OF PETITIONER'S CRIMES

---

[3]Petitioner's habeas petition challenges only the judgment in Case No. 10-CF-2013. (Doc. 1). Respondent provided the records of petitioner's Rule 3.850 proceeding in Case No. 10-CF-2013, as described above, as well as the records of petitioner's Rule 3.850 proceedings in eight other criminal cases (Case Nos. 10-CF-1610; 10-CF-1631; 10-CF-1657; 10-CF-1659; 10-CF-1661; 10-CF-1662; 10-CF-1664; and 10-CF-3030) which were resolved by no contest plea and resulted in a separate judgment.  (*See* Doc. 15, Ex. O, pp. 48-81).  Petitioner initiated separate Rule 3.850 proceedings limited to the judgment in the other eight cases. (Exs. O-T).  Those postconviction proceedings are not described here.

Although petitioner does not raise a substantive claim that the evidence was insufficient to support his convictions, the undersigned relates the evidence presented at trial (Exs. E-F) to provide context to his claims. The evidence is viewed in the light most favorable to the State and with the presumption that the jury resolved all conflicting inferences in favor of the State and against petitioner. *See Jackson v. Virginia*, 443 U.S. 307, 318-19, 326, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).

On May 17, 2010, a burglary and theft occurred at Rhonda Miller's home located at 5213 Melissa Drive in Parker, Florida. (Ex. E, p. 53-56, 65). When Ms. Miller arrived home from work on May 17, 2010, she found a UPS sticker on the front door and went to pull it off, when she noticed the door was ajar and a piece of wood and a piece of the door lock was on the pavement. Miller called the police who, after clearing the house, had her walk through with them to see if she thought anything was missing. (Ex. E, p. 55). A PlayStation 3 (PS3) console and game, and loose change from a Culligan water jug were taken from her son's room, a box of jewelry and Hydrocodone pills prescribed for Ms. Miller were taken from her bedroom, and a Wii console and five Wii games belonging to her husband were taken. (Ex. E, p. 57). The case for her husband's Toshiba laptop was there, but the laptop was missing. (*Id*.).

Ms. Miler testified that the PS3 console was valued at $399, the PS3 game at $59.99, the Wii console at $199.99 and the Wii games from $49.99 to $59.99 each.

(Ex. E, p. 58).  The person who made the jewelry that was stolen valued it at $125. (*Id.*).  There was approximately $50 in the Culligan jug.  (Ex. E, p. 64).  Miller did not know the value of the Hydrocodone because her insurance paid for it.  The only items returned to Ms. Miller (after execution of a search warrant on petitioner's storage unit) were the laptop, the Wii console and the Wii games.  (Ex. E, p. 59).  The front door of Ms. Miller's home had been kicked in, could not be fixed, and had to be replaced at a cost of $1,395.00 for the door and $91.85 for the knobs.  (Ex. E, p. 60).  A photograph of the door showed the wood by the handle was splintered all the way down.  (Ex. E, p. 62; *see also* Ex. G (trial exhibits)).  Ms. Miller was told that the door could not be made secure and should be replaced.  (Ex. E, p. 62).

On cross-examination, Ms. Miller stated that Home Depot did the repairs.  She contacted a carpenter, who told her the door could not be repaired.  (Doc. E, p. 69).

On re-direct, Ms. Miller clarified that not just the door jamb was damaged, the door frame was also damaged.  (Ex. E, p. 71).  A carpenter was not able to repair the door, and Ms. Miller had to replace it.  (Ex. E, p. 72).

Officer Jonathan Hanson was dispatched to the Miller residence with regard to the burglary.  (Ex. E, pp. 74-75).  The front door had been forced open and the door frame was broken.  (Ex. E, p. 75).  The door was splintered around the lock.  (Ex. E, p. 77).

Christopher Lane knew petitioner from the time he was 14 or 15 years old. (Ex. E, p. 79). Lane participated in the burglary at 5213 Melissa Drive with petitioner and Christopher Boggs between May 10-20 at approximately 2:00-3:00 in the afternoon. The home was near the bowling alley. (Ex. E, p. 80). The three men picked that home because it had no car in the driveway. The men knocked on the door several minutes to see if anyone was home and, once they ascertained that the house was empty, Lane shoved the door open. (Ex. E, p. 81). Lane stayed downstairs and took the PlayStation 3 and the loose change from the Culligan jug which he placed in a book bag. Lane later traded the PS3 for cocaine. Petitioner and Boggs went upstairs. Boggs took the Hydrocodone, and petitioner took the Wii. (Ex. E, p. 82).

At the time, the three men were staying at the Labrisa Inn. Lane was currently incarcerated. As part of his plea agreement, Lane agreed to cooperate with law enforcement and told them about the Melissa Drive burglary, in return for immunity for that offense. (Ex. E, p. 83). Lane did not know anything about the laptop being stolen. (Ex. E, p. 85). On a map, Lane identified the neighborhood where the burglary occurred. (Ex. E, pp. 89-90). Lane went to petitioner's storage unit with petitioner and put things in it. (Ex. E, p. 99). Lane could not have entered the storage unit without petitioner present. (Ex. E, p. 102).

Investigator William Stickland made contact with petitioner and Christopher Boggs on May 21, 2010, at the Labrisa Inn.  Strickland searched Boggs and found Hydrocodone with the label ripped off.  (Ex. E, p. 110).  Lane's truck was parked in front of the room.  (Ex. E, p. 111).

Marcus Hansley testified that petitioner discussed with him the fact that he had a storage unit registered to him in the Panama City area, which contained stolen property.  (Ex. E, pp. 114-115).  Petitioner was concerned about the police finding the unit, because its contents would link him to "the crimes."  Hansley notified police of the existence of the unit and gave them a statement on May 28, 2010, two days after petitioner told him.  (Ex. E, pp. 115-116).  Hansley was in jail at the time he gave the statement.  (Ex. E, p. 116).  The charges against Hansley were dropped, but he never had an agreement with the State to have them dropped in exchange for cooperation.  On cross-examination, Hansley stated that petitioner told him while they were both in jail that people were going in and out of his storage unit, taking and bringing things.  (Ex. E, p. 118).

Detective Aaron Wilson was assigned to the case and, after receiving information from Investigators Haire and Romans, developed petitioner as a suspect.  (Ex. E, p. 120).  Wilson ascertained what items were stolen from the Miller home, some of which were recovered from petitioner's storage unit.  The Toshiba laptop, Wii

console and Wii games were returned to Ms. Miller after she identified them as hers. (Ex. E, pp. 120-121).

Wanda Eilers, an employee at HBO storage, testified that only the actual renter, or someone the actual renter authorizes, can enter a unit. Petitioner was the person renting unit B-128. (Ex. E, p. 126). Petitioner never authorized any other person to enter the unit. (Ex. E, p. 128). Petitioner entered into the lease on May 7, 2010. (Ex. E, p. 129). The only date for the one-month lease on which anyone entered the unit was May 20, 2010, and the person who signed in was petitioner. (Ex. E, p. 131).

Investigator Jeff Haire testified that he participated in the search of HBO storage unit B-128 on May 28, 2010. (Ex. F, p. 143). The unit was registered to petitioner. (Ex. F, p. 144). There was a lock on the unit. (Ex. F, p. 148). Inside the storage unit were two backpacks and a bag. The Wii console, Wii games and Toshiba laptop from the Miller robbery were inside. (Ex. F, pp. 144, 149-150). When Haire spoke to petitioner on May 26, 2010, Haire first advised petitioner of his *Miranda* rights. (Ex. F, p. 145). Petitioner waived his rights and agreed to talk to Haire. (Ex. F, pp. 145-146). Petitioner admitted committing a burglary in the Parker area and drove the officers through the neighborhood where he committed the burglary. (Ex. F, p. 146). Ms. Miller's home was in that neighborhood. Petitioner pointed toward

Ms. Miller's home and indicated it was one of the two or three houses within that group. (Ex. F, pp. 146-147, 151).

On cross-examination, Investigator Hair testified that petitioner told him Chris Lane had committed some burglaries in the Cove.  Haire could not swear that when petitioner pointed toward Ms. Miller's home he was talking about a home burglary as opposed to a car burglary, but petitioner had pointed at the Miller home.  (Ex. F, p. 164).  On re-direct, Haire testified that petitioner never mentioned a vehicle during their drive through that neighborhood.  (Ex. F, p. 166).

## SECTION 2254 STANDARD OF REVIEW

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an
> unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review

in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The

appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ
> if the state court arrives at a conclusion opposite to that reached by this
> court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts.  Under
> the "unreasonable application" clause, a federal habeas court may grant
> the writ if the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that principle to the
> facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas

petition upon which there has been an adjudication on the merits in a state court

proceeding, the federal court must first ascertain the "clearly established Federal law,"

namely, "the governing legal principle or principles set forth by the Supreme Court

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by
Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer)
in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the
Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in
part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter,
Ginsburg, and Breyer.

at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)]  does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001).

The United States Supreme Court emphasized recently:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington*, supra, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill v. Mecusker*,  633 F.3d 1272, 1292 (11th Cir. 2011).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).  The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was

incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

DISCUSSION

Ground One  "Denial Of Effective Assistance Of Counsel.  Counsel Failed To File A Motion For Judgement [sic] of Acquital [sic]."  (Doc. 1, p. 5).

Petitioner claims counsel was ineffective for failing to move for a judgment of acquittal (JOA) on the grand theft with property damage charge on the basis that the evidence failed to establish that the damage to the victim's home exceeded $1,000.00. Petitioner alleges that the victim (Ms. Miller) first testified her whole door was damaged, but later stated only the door frame was damaged.  Miller nonetheless replaced the whole door for a cost of $1,395.00.  Petitioner argues:

> Counsel allowed victim to say damages of her old door was $1,395. There is no prove [sic] of this amount.  Simply going out and purchasing a door in the amount of $1,395 is irrelevant to the cost of the original door's damage.  There was [sic] no exhibits presented at trial to say they were the same type of door.  Although counsel did attempt to make a weak argument for judgement [sic] of acquittal.  The defendant was still embarrassed by counsel's lack of knowledge of the case.
>
>   There is a probability had counsel filed a judgement [sic] of acquital [sic] at the beginning of trial, the state would not have been able to meet the elements of Count II Grand Theft w/property damage over $1,000.  There was no physical evidence to support the victim's testimony.

(Doc. 1, pp. 6-7).  Petitioner asserts he presented this claim to the state courts in his Rule 3.850 proceeding.  (Doc. 1, p. 8).

Respondent argues petitioner is not entitled to federal habeas relief because the state courts' rejection of the claim was not contrary to, or an unreasonable application

of, clearly established federal law, nor was the state courts' decision based on an unreasonable determination of the facts.  (Doc. 15, pp. 4-7).

A.      Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  *Id.*, 466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting

effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

B.    Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim as Ground I of his amended postconviction motion. The state courts denied relief on the merits. The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, explained:

> In Ground I, the Defendant claims his counsel was ineffective for failing to file a motion for judgment of acquittal on the charge of grand theft with property damage over $1,000.00 because the alleged victim's testimony and impact receipt showed that the damage to the door of the victim's home was less than $1,000.00. He asserts that if his counsel had filed a motion for judgment of acquittal, the trial court would probably have found that the victim impact receipt, which was not presented at

> trial, did not support the required element of more than $1,000.00 in damage.  However, the defendant's trial counsel did move for judgment of acquittal on the charge of grand theft with property damage over $1,000.00.  At that time, defense counsel argued that no evidence of the cost of repair had been presented and instead the victim went out and replaced the entire door which was not damaged.  (TT. pages 168-170.) Contrary to the Defendant's claim, the victim testified that it was not just the door jamb that had been damaged, but also the frame and lock, as shown in the photographs admitted into evidence.  After the burglary, she had a carpenter examine the door and learned that it could not be repaired, because the door could not be secured.  (TT. pages 60-62.)  The cost to replace the door and the hardware exceeded the threshold of $1,000.00.  Accordingly, the defendant has failed to establish error or prejudice in support of Ground I.

(Ex. K, p. 114).  The First DCA summarily affirmed.  (Ex.  N).

This court has reviewed the trial transcript.  (Exs. E-F).  The state court's factual findings are amply supported by the record and are presumed correct. Petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations; thus, § 2254(d)(2) provides no basis for relief.  *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)).  The remaining question is whether petitioner has satisfied AEDPA's "contrary to" or "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's findings of fact.  28 U.S.C. § 2254(e).

The state courts concluded, consistent with *Strickland*, that petitioner failed to

establish deficient performance (which the court termed "error"), or prejudice, because

counsel did move for a JOA on the charge, unsuccessfully, based on the evidence

presented at trial and on the very argument petitioner makes here.  Counsel argued:

> MR. SHEPARD [Defense co-counsel]: Your Honor, at this time we
> would move for a judgment of acquittal based upon the fact that the State
> has not proved a prima facie case.  Your Honor, with regards to the, let's
> see here, Count II, the grand theft of [sic] damage over $1,000, we don't
> believe there's been reliable testimony with the over $1,000, um,
> particularly with regard to the dollar amount.  Um, the victim in the case,
> alleged victim in the case stated that it was a situation where she replaced
> more than what was broken.  She can't, did not, was unable to put a
> dollar value on what was actually damaged.  Certainly, she didn't put on
> any kind of evidence as to what sort of door she replaced the door with.
> Obviously, what we saw as part of pictures was a very plain door, that
> was nothing fancy.  Um, she did testify that she had spent over $1300 on
> a new door, but I don't believe that there was any evidence presented
> that the door, itself, was damaged, only that the door jamb was damaged.
> However, there was plenty of evidence that she just replaced the door.
>
> MS. JEFCOAT [Prosecutor]: Your Honor, in reference to the amount of
> damage to the dwelling home, first, the victim testified it was not the
> door jamb, it was the door frame that was damaged.  She testified that
> she had to, could not be repaired and had to be replaced, um, and she
> testified that that amount was over a $1,000.  The reliability of her
> testimony, I think is a question for the jury and I believe there's been
> sufficient evidence to submit that point to the jury as well as the other
> charges against the Defendant.
>
> MR. SHEPARD: Judge, she has not presented us with any evidence
> other than her testimony that the door was actually replaced, so we have
> no idea.  I mean, for all we know it could have been some gold studded
> door that she put back on there.  Simply getting up there and testifying,

hey, now I have got a $1300 door, which honestly is more than you could – some people can buy a car for $1300 bucks. This lady bought a door. You know, certainly we would like to have some, seen some sort of evidence or something other than her testimony, a picture, receipt, somebody who put the door in. Somebody who could have said, hey, this door could not have been replaced. With respect to Ms. Jefcoat, I would certainly state that the jamb and frame, I think, at least as far as I am trying to say are one in the same. Basically, it's not the door itself. It's what it latches onto the house. So, you know, that's what, that's what we have got. You know, I think it's, it's, fairly common to know you can replace the part of a door that, um locks or unlocks, you know, part of a door frame that you don't have to replace the entire door. Now whether she decided to do that or not, certainly it was her testimony that she did, but, you know, there's no independent corroboration of any of this and we would simply state to the Court . . .  it's unreasonable to think that there was a $1,000 worth of damage done to a door, particularly when there was no testimony that the door, itself, was damaged, that it was the frame of the door, the jamb, whatever, that was damaged.

(Ex. E, pp. 168-170).  The motion was denied.  (Ex. E, p. 170).

Petitioner has not shown that counsel performed deficiently in arguing for a JOA, or that the argument he proposes, which varies little from the argument counsel made, had a reasonable probability of success.  The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two:        "Denial Of Effective Assistance Of Counsel.  Counsel Failed To
                   File Motion To Suppress Evidence, Illegal Search And Seizure Of
                   Property Not Supported By Warrant."  (Doc. 1, p. 8).

Petitioner alleges that during the execution of the search warrant on his storage

unit, property was seized which was not listed on, or supported by, the warrant.  (Doc.

1, p. 9).  Petitioner faults trial counsel for failing to file a motion to suppress, and

argues that had such motion been filed, the trial court probably would have (1)

reviewed the search warrant and made a determination whether the warrant supported

the seizure of all of the items actually taken from the unit, and (2) determined whether

the seizure of items not listed on the search warrant was supported by probable cause.

Petitioner contends: "The suppression of this evidence would of probably lead [sic]

to acquital [sic]."  (Doc. 1, p. 9).  Petitioner asserts he presented this claim to the state

courts in his Rule 3.850 proceeding.  (Doc. 1, p. 10).

Respondent argues petitioner is not entitled to federal habeas relief because the

state courts' rejection of the claim was not contrary to, or an unreasonable application

of, clearly established federal law, nor was the state courts' decision based on an

unreasonable determination of the facts.  (Doc. 15, pp. 7-9).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance

of counsel is the *Strickland* standard outlined above.  "Where defense counsel's

failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 91 L. Ed. 305 (1986).

B.     Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim as Ground II of his amended postconviction motion. The state courts denied relief on the merits.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, explained:

> In Ground II, the Defendant claims his counsel was ineffective for failing to file a motion to suppress evidence based on the illegal search and seizure of property not supported by the warrant.  He asserts that during a search of his storage unit, property was seized and confiscated that was not listed or supported by the search warrant.  The Defendant argues that there is a probability that if his counsel had filed a motion to suppress evidence, the trial court would probably have reviewed the search warrant and made a determination whether it supported the seizure and confiscation of property actually taken from this storage unit but not listed on the search warrant.  He claims the suppression of that evidence would have probably led to an acquittal.  However, the items were not improperly seized.  The search warrant included "any and all items which may have a nexus to any criminal activity," and the probable cause affidavit was based on a sworn statement that the Defendant rented the storage unit to store items stolen in burglaries.  Law enforcement had probable cause prior to the seizure, and items in plain view may be seized when the seizing officer is in a position where he has a legitimate

right to be, the incriminating character of the evidence is immediately apparent, and the seizing officer has a lawful right of access to the object. *Black v. State*, 630 So. 2d 609, 613 (Fla. 1st DCA 1993).  Defense counsel was not ineffective for failing to file a meritless motion, and the Defendant has failed to establish error or prejudice in support of Ground II.  *Owen v. State*, 986 So. 2d 534 (Fla. 2008).

(Ex. K, pp. 114-115).  The First DCA summarily affirmed.  (Ex.  N).

The court has reviewed the search warrant (Ex. K, pp. 123-126).  The state court's factual findings are amply supported by the record and are presumed correct. Petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations; thus, § 2254(d)(2) provides no basis for relief.  *Holsey*, 694 F.3d at 1257; *Landers*, 776 F.3d at 1294.  The remaining question is whether petitioner has satisfied AEDPA's "contrary to" or "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's findings.  28 U.S.C. § 2254(e).

The state courts concluded, consistent with Supreme Court precedent, that petitioner failed to establish counsel was ineffective, because petitioner's proposed motion to suppress lacked merit.  *See Kimmelman, supra*; *see also Freeman v. Att'y Gen.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir.

1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Petitioner was suspected in (and ultimately charged with) multiple burglaries. (*See* Ex. A, pp. 26-27).  Prior to issuance of the search warrant, petitioner confessed to law enforcement to having burglarized multiple homes and vehicles.  (Ex. K, pp. 29-36).  The complaint filed in Case No. 10-CF-2013 listed the following items as taken from the victim's home:  $50.00, a Sony PlayStation 3 gaming system, a Nintendo Wii gaming system, a blue ray DVD player, five PS3 video games, five Wii video games, an ipod Shuffle, and a Toshiba laptop.  (Ex. A, p. 2).  The search warrant was supported by the following probable cause narrative:

> On May 28, 2010, your affiant made contact with Marcus Hansley at the Bay County Jail.  During this interview, Mr. Hansley provided a sworn statement stating that Mr. Mattison told him that he was "worried" because that [sic] he was being investigated in reference to numerous burglaries throughout Bay County and he was "afraid" that law enforcement would locate the storage unit in which he had rented to store the items stolen during those burglaries.  According to Mr. Hansley's statement, Mr. Mattison confided in him that the storage unit is located in the Bay County area and is registered in his name, Steven Mattison. After obtaining this information, an extensive search was conducted which revealed that storage unit B128 at HBO Storage located at 330 South Tyndall Parkway is registered in Mr. Mattison's name.  It should also be noted that this business is near the residence of Mr. Mattison's primary residence and the Labrisa Inn, as well as numerous unsolved vehicle burglaries in which items were taken that are similar to the items taken in the aforementioned burglaries.

   Due to the facts listed above and that in my experience as a law enforcement officer, people who commit burglaries and thefts store property at a location where the access is limited to themselves or a select few designated by them, leads your affiant to believe the described premises, storage unit B128 within HBO Storage located at 330 South Tyndall Parkway in Parker, Florida, does contain evidence, "Exhibit B", o[f] a criminal violation of Florida state statutes, specifically, burglary of a conveyance (F.S.S. 810.02) and grand theft (F.S.S. 812.014).

(Ex. K, p. 126).

   The Toshiba laptop, Wii and Wii games were seized from the storage unit, as were other items not connected to this particular case.  (Ex. K, pp. 127-128).  Of the items seized, only evidence of the Toshiba laptop and Wii-related items was used at petitioner's trial.  The search warrant identified as items to be searched for and seized various named items (that is, named by brand and/or serial or model number), including a handgun, a Dell laptop, cameras, global positioning systems, an iPod Touch, money and a wallet.  (Ex. K, p. 125).  Neither the Toshiba laptop, Wii console, nor Wii games were among the specifically named items.  (*Id*.).  The search warrant also identified as items to be searched for and seized "any and all items which may have a nexus to any criminal activity."  (*Id*.).

   The state court concluded, reasonably, that counsel was not ineffective for failing to file petitioner's proposed motion to suppress, because the motion lacked merit and would have been denied.  The Toshiba laptop, Wii console and Wii games

fell within the description of items subject to the warrant and, even if deemed not

within the description, were legally seized and admissible under the plain view

doctrine.  The court in *Black, supra*, cited by the state court, accurately outlined the

law governing the seizure of contraband, not described in a search warrant,

discovered in plain view by police while lawfully executing a search warrant:

> Items in plain view may be seized when (1) the seizing officer is in a
> position where he has a legitimate right to be, (2) the incriminating
> character of the evidence is immediately apparent, and (3) the seizing
> officer has a lawful right of access to the object.  *Horton v. California*,
> 496 U.S. 128, 136, 110 S. Ct. 2301, 2308, 110 L. Ed. 2d 112, 123
> (1990).  Under the third requirement, police must have probable cause
> prior to seizure.  *Id*.; *Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S. Ct.
> 1149, 1153-54, 94 L. Ed. 2d 347 (1987).

*Black*, 630 So. 2d at 613.  All of those elements are present here.[5]  Petitioner's

proposed motion to suppress lacks merit.

An additional note, as to prejudice, bears mention.  The foregoing demonstrates

that had counsel filed a motion to suppress, the patently incriminating items (such as

the laptop, Wii and Wii games) would not have been suppressed.  Petitioner's greatest

potential relief would have been suppression of only those items not reasonably

---

[5]Petitioner's supporting memorandum and reply assert that counsel should have challenged
not only the manner in which the warrant was executed, but also the validity of the warrant itself on
the grounds that the description of the items to be seized was overly broad.  (*See* Doc. 18, p. 6).  The
court will not consider this argument as it was not raised in the petition and was not presented to the
state courts in petitioner's amended Rule 3.850 motion.  (*See* Doc. 1; *see also* Doc. 15, Ex. K, pp.
49-50).

suspected of having been taken in one of the burglaries.  To the extent petitioner complains that some of the items seized were his own personal property unconnected to any burglaries, he cannot establish prejudice because he has not shown any of those items were admitted against him at trial.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Two.

| Ground Three | "Denial Of Effective Assistance Of Counsel.  Counsel Filed a Motion To Continue, Without Defendant[']s Consent and Presence, Waiving Defendant[']s Right To Speedy Trial Violating Defendant[']s 1st, 5th, 6th, and 14th Amendment U.S.C.A." (Doc. 1, p. 11). |
|---|---|

Petitioner claims trial counsel was ineffective for moving to continue the trial without his consent, which "caused his speedy trial to be waived."  (Doc. 1, p. 12). Petitioner alleges that counsel acknowledged having done this at his sentencing hearing.  (*Id*.).  Petitioner contends that had counsel not moved for a continuance, "the defendant would of been able to have a fair and speedy trial and not been violated of his 6th Amendment rights to a speedy trial, by a court appointed official."  (*Id*.). Petitioner asserts he presented this claim to the state courts in his Rule 3.850 proceeding.  (Doc. 1, p. 13).

Respondent argues petitioner is not entitled to federal habeas relief because the state courts' rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state courts' decision based on an unreasonable determination of the facts.  (Doc. 15, pp. 9-15).

A.    Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard outlined above.

B.    Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim as Ground III (amended) of his amended postconviction motion.  The state courts denied relief on the merits.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, explained:

> In Ground III, the Defendant claims his counsel filed a motion to continue without his consent and presence. In his March 4, 2013, Motion for Postconviction Relief, he asserted he told counsel to proceed and not waive his right to a speedy trial.  The Defendant stated that his counsel adivsed the Court on the record that the motion to continue was filed without and against his consent.  He claimed that if his counsel had not filed a motion to continue, there was a probability that an unfair advantage would not have shifted to the State, that the trial would have proceeded as scheduled, and he would not have been found guilty because Investigator Craig Romans, who would have taken the stand on his behalf, was undergoing surgery the week the trial took place.  The record reflects that Defense counsel filed the motion because she had just received additional discovery from the State and needed more time to

prepare for the trial.  She acknowledged that she filed the motion without his consent.  However, the Defendant failed to establish prejudice in support of this claim beyond the conclusory statement that Investigator Romans would have taken the stand on his behalf.  The Defendant did not indicate what testimony would have been offered by Investigatory [sic] Romans on his behalf, and there was ample evidence to support the jury's verdict.  In his amended Ground III, the Defendant simply asserts that if his counsel had not filed a motion to continue, an unfair advantage would not have shifted to the State, allowing the State excess time to prepare their case.  This claim is conclusory and insufficient.  <u>See</u>, *Freeman v. State*, 761 So. 2d 1055 (Fla. 2000); *Kennedy v. State*, 547 So. 2d 912 (Fla. 1989).

(Ex. K, p. 115).  The First DCA summarily affirmed.  (Ex.  N).

The state court's factual findings are amply supported by the record and are presumed correct.  Petitioner has not shown that "no 'fairminded jurist' could agree" with the state court's factual determinations.  The only question is whether petitioner has satisfied AEDPA's "contrary to" or "unreasonable application" standard, 28 U.S.C. § 2254(d)(1), giving deference to the state court's factual findings.  28 U.S.C. § 2254(e).

The state courts rejected petitioner's claim on the prejudice prong.  As an initial matter, petitioner's only assertion of prejudice in his federal habeas petition is that had counsel not moved for a continuance, he "would of been able to have a fair and speedy trial and not been violated of his 6th Amendment rights to a speedy trial".  (Doc. 1, p. 12).  This does not state a plausible basis to find  *Strickland*'s prejudice

element satisfied.  It is insufficient to merely allege that counsel's conduct impinged petitioner's right to a speedy trial – petitioner must show there is a reasonable probability the result of his criminal proceeding would have been different had counsel not waived his speedy trial right by moving for a continuance.  Petitioner makes no such showing.

Even in light of the additional allegations petitioner made in his amended Rule 3.850 motion, he still has not shown the state courts unreasonably applied *Strickland* in rejecting his claim.  The record establishes that defense counsel Downing was appointed to represent petitioner in Case No. 10-CF-2013, as well as in twelve other cases charging petitioner with burglaries and other crimes, on November 10, 2011. (Ex. A, p. 19).  Defense counsel Downing filed a notice of appearance on December 14, 2011.  (Ex. A, p. 23).  At a December 14, 2011 pretrial conference, the court scheduled petitioner's cases for trial on  January 10, 2011.  (Ex. A, p. 21; Ex. B, pp. 176-181).   On January 6, 2011, defense counsel requested a continuance <u>for petitioner's benefit</u> – to enable defense counsel more time to prepare for trial due to the numerosity of charges pending against him and counsel's recent receipt of additional discovery.  (Ex. A, pp. 44-45).  The additional discovery included two statements petitioner made to law enforcement (Ex. A, pp. 26-45) and, as counsel discussed during sentencing, a statement by Mr. Lane (Ex. D, p. 280).  The

continuance resulted in petitioner's trial being delayed thirty-five days (from January 10, 2011, to February 14, 2011).  (Ex. A, p. 46).  Petitioner was brought to trial approximately 232 days (less than 8 months) after his arrest.

Although petitioner contends the continuance enhanced the State's trial preparation by giving the prosecutor more time to prepare (*see* Ex. K, p. 101), nothing in the record suggests the State was not fully prepared for trial on January 10, 2011, or that the prosecutor's presentation of evidence was benefitted in any way by the delay in trial.  The defense, on the other hand, admittedly needed and benefitted from the additional time.[6]  Even assuming (without deciding) that the State, too, must have benefitted from the extra time, petitioner alleges no facts remotely suggesting that the State's benefit was so much more than the defense's that there is a reasonable probability the result of his trial would have been different had the case gone to trial on January 10, 2011.  In addition, although petitioner states he was prejudiced by the continuance because "there is . . . the probability the defendant would of had a not guilty verdict had Inv. Craig Romans took the stand on behave [sic] of the defendant. Inv. Craig Romans was undergoing surgrey [sic] the week of trial Feb. 14th-18th 2011", (*see* Ex. K, p. 50), this aspect of petitioner's claim is too speculative to warrant

---

[6]As respondent points out, had defense counsel not requested a continuance, this claim would likely be one that counsel was ineffective for going to trial unprepared and for not requesting a continuance.

relief, as the state courts recognized.  Petitioner provides no evidence that the defense had actually planned to call Romans, nor does petitioner provide the substance of Romans' proposed testimony.  Without some specificity as to Romans' testimony, any assertion that petitioner was prejudiced as a result of the trial being continued and Romans being unavailable is mere speculation and does not entitle him to relief.  *See generally Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006) (explaining that *Strickland*'s prejudice burden "is heavy where the petitioner alleges ineffective assistance in failing to call a witness because 'often allegations of what a witness would have testified to are largely speculative.'" (*quoting United States v. Guerra*, 628 F.2d 410, 413 (5th Cir. 1980)).

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Three.

| Ground Four | "Denial Effective Assistance Of Counsel.  Counsel Failed To File A Motion For Statement Of Particulars Prior To Trial.  Violating Defendant's 5th 6th, And 14th Amendment U.S.C.A. Due Process Of Law."  (Doc. 1, p. 14). |

Petitioner's final claim is that counsel was ineffective for failing to file a motion for statement of particulars.  Petitioner alleges, in pertinent part:

> The Information in this case fails to inform the defendant of the particulars of the offense sufficiently to prepare a defense.  Defendant propounds, i.e., an element of the charged offense, exact cost of the damage was not provided at the time of trial.  Reciepts [sic] for victim's new door werent' brought out untel [sic] sentencing.  There was not exhibits of any dollar amount damaged presented at trial.  Defense cannot prepare to meet the prosecution's case without knowing the specific of the offense charged.  The charging information only state Grand Theft with Property damage over $1,000.  It does not state the specifics of the damages, which enhances the regular grand theft to a first degree felony.

(Doc. 1, p. 15).  Petitioner asserts he presented this claim to the state courts in his Rule 3.850 proceeding.  (Doc. 1, p. 14).

Respondent argues petitioner is not entitled to federal habeas relief because the state courts' rejection of the claim was not contrary to, or an unreasonable application of, clearly established federal law, nor was the state courts' decision based on an unreasonable determination of the facts.  (Doc. 15, p. 15).

A.     Clearly Established Federal Law

The clearly established federal law governing claims of ineffective assistance of counsel is the *Strickland* standard outlined above.

B.     Section 2254(d) Review of State Courts' Decision

Petitioner raised this claim as Ground IV of his amended postconviction motion.  The state courts denied relief on the merits.  The state circuit court's written order, which is the last reasoned decision rejecting petitioner's claim, explained:

In Ground IV, the Defendant claims his counsel was ineffective for failing to file a motion for statement of particulars, because the Information was insufficient to enable him to prepare a defense.  He asserts that an element of the charged offense, the exact cost of the damage, was not provided at the time of trial.  The Defendant argues that if his counsel had filed a motion for statement of particulars for additional facts as to the exact cost of the damage caused by alleged offense, there is the probability that the cost would have been determined to be less than $1,000.00 prior to trial, and the State would have probably amended the Information to burglary of a dwelling.  A motion for statement of particulars may be filed when the information fails to inform a defendant of the particulars of the offense sufficient to enable him to prepare his defense.  However, the amount of the damage to the victim's house was proven at trial, as addressed above.  There was no ambiguity in the Information, and the Defendant has failed to establish that he was prejudiced or embarrassed at trial by any ambiguity, as the record is clear that the case was tried on, and defense counsel defended him against, the two offenses charged.  <u>See</u> *Hart v. State*, 761 So. 2d 334, 335 (Fla. 4th DCA 1998).  The Defendant's claim that the State probably would have amended the Information to the reduced charge of burglary of a dwelling is unfounded and speculative.  <u>See</u>, *Maharaj v. State*, 778 So. 2d 944, 951 (Fla. 2000).

(Ex. K, pp 115-116).  The First DCA summarily affirmed.  (Ex. N).

Petitioner does not dispute any of the state court's factual determinations.  Thus,

any claim for relief must be based on whether the state courts' ruling was contrary to,

or an unreasonable application of, the *Strickland* standard.

Florida Rule of Criminal Procedure 3.140(n) provides:

The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars when the indictment or information on which the defendant is to be tried fails to inform the defendant of the particulars of the offense sufficiently to enable the defendant to prepare

> a defense. The statement of particulars shall specify as definitely as
> possible the place, date, and all other material facts of the crime charged
> that are specifically requested and are known to the prosecuting attorney,
> including the names of persons intended to be defrauded. Reasonable
> doubts concerning the construction of this rule shall be resolved in favor
> of the defendant.

Fla. R. Crim. P. 3.140(n).   The Supreme Court has identified two constitutional

requirements for an indictment: that it (1) contain all the elements of the offense and

fairly inform the defendant of the charges against which he must defend; and (2)

enable the defendant to plead an acquittal or conviction that would bar future

prosecutions for the same offense.   *United States v. Resendiz-Ponce*, 549 U.S. 102,

108, 127 S. Ct. 782, 166 L. Ed. 2d 591 (2007).

The state courts concluded, reasonably, that counsel had no good-faith basis to

request a statement of particulars, because the information tracks the statutory

language and contains the requisite specificity.  (Ex. A, p. 5).  *See also, e.g., Saldana

v. State*, 980 So. 2d 1220 (Fla. 2d DCA 2008) (holding that trial court did not err in

denying motion for statement of particulars where the information sufficiently

informed the defendant of the charges against him).  The State was not required to

allege in the information the exact dollar amount of damage.  Additionally, the trial

transcript demonstrates that defense counsel was able to, and did, prepare a

comprehensive defense to the charged offenses, including attempting to raise

reasonable doubt, through cross-examination of Ms. Miller, whether the State proved the requisite dollar amount of damage.   Petitioner has not shown deficient performance or prejudice arising from counsel's failure to file a motion for statement of particulars.

The state courts' rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Four.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning

of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentence in *State of Florida v. Steven Allen Mattison*, Bay County Circuit Court Case No. 10-CF-2013, be DENIED, and the clerk be directed to close the file.

2.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 3rd day of March, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of objections shall be served upon the magistrate judge and all other parties.    A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th CIR. R. 3-1; 28 U.S.C. § 636.